## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

Elsie P.,[1]

      **Plaintiff,**

v.                                **Civil Action No. 2:21-cv-375**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff Elsie P. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. Plaintiff cites a single error. She alleges that the Commissioner's Administrative Law Judge ("ALJ") failed to properly evaluate the opinion of a consultative examiner. As a result, she argues that the ALJ's residual functional capacity ("RFC") is not supported by substantial evidence, and the ALJ improperly found her capable of performing past relevant work. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report finds no error in the ALJ's assessment of the evidence and therefore recommends that the court grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

# I.   PROCEDURAL BACKGROUND

On December 1, 2016, Plaintiff filed[2] for DIB and SSI. (R. 26). Plaintiff alleged disability beginning September 14, 2015, id., based on a full thickness tear in the superior labrum of her left hip, multilevel spinal spondylosis, spinal facet arthropathy, disc protrusion, left leg pain and numbness, back pain radiating to buttock, and fatigue, (R. 92). The state agency denied her application initially and on reconsideration. (R. 26). Plaintiff then requested an administrative hearing. Id. The hearing was held on August 21, 2019. Id. Counsel represented Plaintiff at the hearing, and a vocational expert ("VE") testified. Id.

On September 23, 2019, the ALJ denied Plaintiff's claims for DIB and SSI, finding she was not disabled during the period alleged. (R. 35). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 29). The ALJ also found that Plaintiff could perform her past relevant work as a call center representative. (R. 34). On August 31, 2020, the Appeals Council denied Plaintiff's request for review. (R. 9).

On July 8, 2021, Plaintiff filed her complaint in this court. Compl. (ECF No. 1). Plaintiff seeks judicial review of the Commissioner's final decision that she was not entitled to an award of DIB or SSI, claiming that "[t]he conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation." Compl. ¶ 8 (ECF No. 1, at 2). On February 18, 2022, Plaintiff moved for summary judgment. (ECF No. 18). Plaintiff argues that the case should be reversed or remanded because the ALJ failed to properly evaluate opinion evidence from a consultative examiner. Pl.'s Mem. L. Supp. Mot. Summ. J. ("Pl.'s

---

[2] Plaintiff had a prior October 2015 application for benefits. (R. 92, 109, 121, 309-10). Her application was denied on reconsideration in May 2016. (R. 309-10). She did not appeal. Id.

Mem.") (ECF No. 19, at 1). On March 21, 2022, the Commissioner opposed Plaintiff's motion and moved for summary judgment. (ECF No. 20). The Commissioner argues the ALJ's assignment of weight to the consultative examiner's opinion and the resulting RFC finding were both supported by substantial evidence. Mem. Supp. Def.'s Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 21, at 1). Plaintiff replied. ("Pl.'s Reply") (ECF No. 22). After a review of the record, this Report considers each of these arguments.

## II.   FACTUAL BACKGROUND

Plaintiff was born on January 14, 1956. (R. 259). At the time of the ALJ's decision, she was 63 years old, (R. 35, 259), and qualified as a person closely approaching retirement age, see 20 C.F.R. §§ 404.1563(e), 416.963(e). Plaintiff met the insured status requirements under the Social Security Act until December 31, 2020. (R. 29). She has not engaged in substantial gainful activity since September 14, 2015, the alleged onset date. Id. She has a high school education, (R. 73), and she has reported past work as a retail cashier, a call center representative, and a home health aide, (R. 34, 355).

### A.   Plaintiff's Health Treatment

Plaintiff's arguments in this court do not require a complete review of her medical history as she disputes only the ALJ's assessment of the opinion of consultative examiner Lisa Harris, M.D. This Report sets out the medical history relevant to that analysis. Plaintiff's injuries stem from motor vehicle accidents in which she was a pedestrian victim.

#### 1.   2015 Motor Vehicle Accident ("2015 MVA")

On September 14, 2015, while Plaintiff was waiting at the bus stop, a motor vehicle came over the curb and struck Plaintiff on the right side, propelling her to the ground. (R. 424, 531). She landed on her right side. (R. 424). Spinal x-rays the following day did not show any fractures or malalignment, although there was some evidence of degenerative disc disease. Id. Plaintiff

was referred to physical therapy. (R. 446). One week after the 2015 MVA, during her initial evaluation, Plaintiff displayed tenderness and constant lower back pain. Id. Her cervical and truck active ranges of motion ("ROM") were decreased. Id. The examiner assigned Plaintiff a "[g]ood prognosis." (R. 447).

In October 2015, Amanda K. Mitchell, N.P., at Lighthouse Care-A-Van, noted that Plaintiff's lower back was "tender to light touch" and she had "minimal [ROM] in all directions." (R. 493). However, a few weeks later, on November 12, 2015, Ms. Mitchell found that Plaintiff had 5/5 strength in her lower leg and a good ROM. (R. 513).

In late November 2015, Plaintiff was evaluated for physical therapy by The Therapy Network. (R. 539-41, 768-70). She was assessed with changes in her cervical, bilateral upper extremity, and lumbar ROMs. (R. 540). She had "severe changes in muscle turgor in the cervical spine as well as posture." Id. The intake evaluator predicted that, at the completion of care, Plaintiff should be able to perform various activities, including bending and stooping with only moderate difficulty, and no limitations with lifting overhead or carrying groceries. (R. 769). However, Plaintiff did not appear to reach the expected level before discharge. See (R. 771).

### 2. 2016 Motor Vehicle Accident ("2016 MVA")

On January 31, 2016, Plaintiff was struck by a turning motor vehicle while she was crossing the street. (R. 580). She landed on her buttocks and elbow, (R. 666), suffering multiple contusions, a humerus distal fracture, and back pain, (R. 582-83). The following day, emergency department providers noted that she had 5/5 muscle strength in her upper and lower extremities. (R. 578).

4

On March 8, 2016, Plaintiff was treated at Gershon Pain Specialists ("Gershon"). (R. 624-26). Steven L. Gershon, M.D.,[3] observed that Plaintiff's "pain did not change significantly after the second accident." (R. 624). Dr. Gershon noted that her pain was primarily on her left side and that it radiated into her left leg. Id. A magnetic resonance imaging ("MRI") exam showed multilevel spondylosis. Id. Her strength was normal, and there was no muscle atrophy. (R. 625). Her hip ROM was reduced, and she had pain with repetitive flexion of the lumbar spine. Id.

In April 2016, testing showed a full thickness tear of the anterior superior labrum. (R. 620, 647). Dr. Gershon noted that her gait and stance were "slightly antalgic," and she had a reduced hip ROM and left-side ROM. (R. 648). She reported that since her last visit in March, "she ha[d] been walking with periods of rest and ha[d] been able to go to the grocery store and complete her activities of daily living with improvement." (R. 647). Plaintiff reported an episode of falling while walking in May, (R. 729), and again in July 2016, (R. 853). A July Gershon visit had similar findings to the April visit. (R. 854). In September 2016, her provider noted that she would "require a cane due to her instability and history of falls." (R. 887); see also (R. 1159). A cane was prescribed. (R. 1169).

In May 2017, Plaintiff visited the emergency department for left arm pain. (R. 954). She had 5/5 motor strength and her grip strength was normal bilaterally, (R. 955), but the left grip was "slightly weaker" than the right grip, (R. 962). The following September, Plaintiff treated with Lighthouse Care-A-Van for left hip, leg, and back pain. (R. 1010). She reported that her leg gave "out on her at time[s] and she need[ed] a walker." Id. In October 2017, Plaintiff told Ms. Mitchell

---

[3] Although Dr. Gershon co-signed Plaintiff's medical records, the appointments appear to have been conducted by various other health professionals. See, e.g., (R. 626, 648).

that she could not "walk more than 20 feet without having to sit," which "affect[ed] her balance" and had caused her to fall "6 times in 6 months." (R. 1039). She used a walker. (R. 1009).

On January 8, 2018, Jason McHugh, D.O., at Virginia Orthopaedic and Spine Specialists ("VOSS"), found that Plaintiff had 5/5 strength bilaterally. (R. 1002). Later that week, Plaintiff expressed that she would not return to physical therapy because "it [would] not help." (R. 1001).

In March 2018, Plaintiff's provider at Gershon noted that—although a cane had been ordered to assist with Plaintiff's instability—Plaintiff was no longer using the cane because "she felt it was not stable enough, especially when walking on sidewalks." (R. 1162). Her gait and stance were only "slightly antalgic." (R. 1163). She also did "not have difficulty transitioning positions on the examination room table." Id.

In April 2018, Plaintiff visited Ernesto Luciano-Perez, M.D. (VOSS), with complaints of left hip pain. (R. 1484). She was using a three-wheeled rolling walker. Id. The following month, she presented to the emergency department with complaints of hip and back pain, stating that she could not stand on her left foot. (R. 1109). Charles W. Erdman, M.D., found that Plaintiff had normal strength in her left leg, but that she was positive for a "gait problem." (R. 1114).

In June 2018, Plaintiff saw David D. Alcantara, M.D. (VOSS), regarding chronic pain. (R. 1534). She reported falling. (R. 1536). Dr. Alcantara found that she had no pain with hip ROM and that she displayed full ROM. (R. 1539). He also found that Plaintiff displayed normal motor strength in all extremities, including 5/5 bilaterally in her leg muscles (i.e., hip flexors, quadriceps, hamstrings, and ankle and toe flexion) and arm muscles (biceps, triceps, deltoids, wrist extension and flexion, and hands). Id. The following month, at a follow-up appointment for injections she had received, (R. 1568), Dr. Alcantara again found that Plaintiff displayed 5/5 motor strength bilaterally in all her arm and leg muscles. (R. 1573). Plaintiff was continuing with her walking

exercise regime. (R. 1568). Plaintiff visited the emergency department multiple times in August 2018 for her other health issues and was found with a normal gait each time. (R. 1241, 1252, 1265).

In January 2019, Wendy F. Alband, M.D., at Eastern Beach Medical Associates, (R. 1316), found that Plaintiff had a normal ROM and 5/5 muscle strength, (R. 1319). The following month, Dr. Alcantara observed that Plaintiff was using a rolling walker but had "[n]o difficulty with tandem gait." (R. 1594). In March 2019, Mark B. Kerner, M.D. (VOSS), found that Plaintiff had "normal strength and sensation and reflexes." (R. 1612). She also had negative straight leg tests in both legs. (R. 1616). Dr. Kerner recorded that Plaintiff was ambulating "without assistive device" and full weight bearing. Id.

In April 2019, Plaintiff presented to the emergency department complaining of back pain. (R. 1286). She requested and received a prescription for a walker to assist with getting in and out of her car because of back pain. (R. 1290). However, from May to August 2019, Plaintiff's providers noted that she had a normal gait. (R. 1347, 1350, 1471-72, 1477). In July 2019, Dr. Alcantara again assessed Plaintiff with normal motor strength in all areas. (R. 1636-37).

## B.     Opinion Testimony

### 1.     Lisa Harris, M.D.

Plaintiff presented to Lisa Harris, M.D., twice for a consultative examination. (R. 531-36, 994-99). Dr. Harris provided her assessment to the state disability office. Id.

#### a.     December 2015

Plaintiff reported the 2015 MVA to Dr. Harris. (R. 531). Plaintiff told Dr. Harris that she could only lift 5 pounds, walk for 5 to 10 minutes, and sit for 15 minutes. (R. 532). She also reported that she could cook and do dishes. Id. Dr. Harris observed that Plaintiff "had slight

difficulty with ambulating" but did not note the use of any assistive device. (R. 533). Plaintiff could get on and off the examination table, could get in and out of her chair slowly, and could dress and undress herself. Id. Plaintiff's grip strength was 5/5 for both hands, and she had full range of motion in all fingers. Id. She could walk on her heels and in tandem, but she complained of hip pain. (R. 534). Dr. Harris found 5/5 strength in Plaintiff's upper extremities and right lower extremity, and 4/5 strength for her left lower extremity. Id.

Dr. Harris opined that Plaintiff could "walk on level ground or stand 20 minutes per hour" and would be limited to lifting 10 pounds occasionally. (R. 536). Dr. Harris did not recommend that Plaintiff carry weight. Id. However, Dr. Harris found that Plaintiff was unlimited in performing manipulative movements (e.g., grasping). Id.

### b.   August 2017

Plaintiff again visited Dr. Harris for evaluation on August 13, 2017. (R. 994). Dr. Harris recorded that Plaintiff had "difficulty with ambulation and use[d] a walker for assistance." Id. Plaintiff told Dr. Harris that she could not "stand at all without pain," and that she avoided extra walking. (R. 995). Plaintiff reported that she could perform "all household chores if she [took] her time except vacuuming." Id. Plaintiff demonstrated 5/5 grip strength in both hands. Id. She had no significant deficit in ROM for her arms and shoulders. Id. Dr. Harris found 5/5 strength in Plaintiff's upper extremities and right lower extremity, and 4/5 strength for her left lower extremity. (R. 996).

Dr. Harris opined that Plaintiff could stand for 15 minutes an hour during a normal workday. (R. 998). She found that a walker was "medically required for ambulation." Id. Dr. Harris did not recommend that Plaintiff lift or carry weight or perform certain postural movements,

such as bending, stooping and crouching. Id. Dr. Harris found that Plaintiff could perform manipulative movements (e.g., grasping) "as required." Id.

### 2. State Agency Physicians

On initial review in September 2017, Richard Surrusco, M.D., opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (R. 102-04). Dr. Surrusco noted that Plaintiff "require[d] a cane for ambulation due to significant instability." (R. 103). On reconsideration in January 2018, Jack Hutcheson, M.D., concurred with Dr. Surrusco's weight findings. (R. 116). He noted that Plaintiff was "healing" from her motor vehicle accident, and that she was "doing well but uses a walker on occasion." (R. 117).

### C. Plaintiff's Function Report

In May 2017, Plaintiff completed a function report in which she did not report using an ambulation assistive device. (R. 352). She reported cooking, washing dishes, and doing laundry. (R. 348).

### D. Testimony Before the ALJ

The ALJ questioned Plaintiff at the hearing on August 21, 2019. (R. 68). The ALJ also heard testimony from the VE, Barbara Byers. Id.

### 1. Plaintiff's Testimony

Plaintiff testified that she stopped working because of the 2015 MVA. (R. 75). She testified of "constant pain," (R. 78), but she stopped attending pain management because of insurance difficulties, (R. 77). She represented that she first started using a walker in 2017, (R. 76), and that she fell a couple of times a month when she did not use the walker, (R. 82). However, she had about five to ten "good days" a month when she could walk a block and half without her walker and cane. See (R. 84-85). She stated that she could shop for 20 or 30 minutes at a time,

and that she did not use a motorized shopping cart because the carts were always unavailable or insufficiently charged. (R. 81-82). She specified that she ordinarily spent her day lying down and watching television. (R. 83). She lived in a one-story home without any accessibility modifications. (R. 86).

### 2.     Testimony from the VE

The VE characterized Plaintiff's prior work as a call center representative[4] (DOT 249.362-026) as requiring a sedentary physical demand level. (R. 88). The ALJ's hypothetical for the VE posited a person with the same age, education, and work experience as Plaintiff with the following limitations:

> · limited to light work, but only able to sit and stand four hours a day, could occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, frequently balance, occasionally stoop, kneel and crouch and never crawl[.]

Id. The VE testified that the call center representative position would be available to such a person. Id. Upon further questioning, the VE testified that "for the sedentary job [of call center representative], the walker would be, in most cases, . . . allowed," and not an accommodation or hazard. (R. 89). Upon cross-examination by Plaintiff's counsel, the VE testified that the use of a walker could be "occasional, frequent, or constant" without affecting the availability of the call center representative position. Id.

### III.     STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v.

---

[4] As the ALJ found Plaintiff's other prior relevant work beyond her RFC, (R. 34), the VE's testimony on those positions is not summarized.

Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison

Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence,

but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640,

642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d

585, 589 (4th Cir. 1996), superseded by statute 20 C.F.R. § 416.927(d)(2); Hays, 907 F.2d at 1456.

"Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled,

the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate,

the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)).

The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive

and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 865

(4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's

determination is not supported by substantial evidence on the record, or the ALJ made an error of

law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.    ANALYSIS

Plaintiff's brief identifies one error in the ALJ's decision that she claims warrants remand.

She contends that the ALJ's findings are not supported by substantial evidence because the ALJ

improperly weighed Dr. Harris's consultative opinion. As explained below, this Report finds no

error in the ALJ's analysis. Accordingly, this Report concludes that remand is not warranted, and

therefore recommends that the court affirm the Commissioner's decision.

A.    **Framework for SSA Disability Evaluation**

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). Title XVI of the Act provides supplemental security income benefits to "financially needy individuals who are aged, blind, or disabled regardless of their insured status." Bowen v. Galbreath, 485 U.S. 74, 75 (1988) (citing 42 U.S.C. § 1382(a)). As relevant here, the Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), § 416.905(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a), 416.905(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1.    Is the individual involved in substantial gainful activity?

2.    Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3.    Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4.    Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5.    Does the individual's impairment or combination of impairments prevent him
      or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five,

means the claimant is not disabled.  An affirmative answer to questions three or five establishes

disability.  The claimant bears the burden of proof during the first four steps; if the analysis reaches

step five, the burden shifts to the Commissioner to show that other work suitable to the claimant

is available in the national economy.  See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly

v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled.  20

C.F.R. §§ 404.1520(a)(3), 404.1520b, 416.920(a)(3), 416.920b. This includes "(1) the objective

medical facts; (2) the diagnoses and expert medical opinions of the treating and examining

physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational

background, work history, and present age."  Jolly, 2017 WL 3262186, at *6 (citing Hayes v.

Gardner, 376 F.2d 517, 520 (4th Cir. 1967)).  Ultimate responsibility for making factual findings

and weighing the evidence rests with the ALJ.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.    The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from

her alleged disability onset date until the hearing date.  (R. 29).  At step two, the ALJ found that

Plaintiff suffered from the following severe impairments: full thickness tear in the superior labrum

of left hip; and L4-L5 disc protrusion with left lateral recess stenosis and slight mass effect.  Id.

At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations

of impairments that met or medically equaled the severity of one of the listed impairments.  Id.

The ALJ developed a finding regarding Plaintiff's RFC.  She determined Plaintiff was able

13

to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except the claimant could only occasionally climb ramps and stairs. She could never climb ladders, ropes, and scaffolds, but she can frequently balance. She could occasionally stoop, kneel, crouch, but she could never crawl. The claimant should be allowed to use a walker.

(R. 30). At step four, the ALJ concluded that Plaintiff could perform past relevant work as a call center representative. (R. 34). The ALJ thus found that she was not disabled. (R. 35).

## C.   Substantial Evidence Supports the ALJ's RFC Finding Because She Appropriately Weighed the Opinion of the Consultative Examiner.

Plaintiff has one only argument before the court. She argues that the ALJ failed to properly weigh the opinion of consultative examiner, Dr. Harris. Pl.'s Mem. (ECF No. 19, at 14). Specifically, Plaintiff advocates that greater weight should have been assigned to Dr. Harris's opinion that "Plaintiff's use of a walker was medically necessary, she is incapable of carrying any weight, and she is unable to perform postural movements such as a bending, stooping, or crouching."[5] Id. at 15; see also (R. 536, 998). The ALJ found that Plaintiff was capable of sedentary work, (R. 30), which requires "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," 20 C.F.R. § 404.1567(a), 416.967(a). After considering the ALJ's opinion and the record as a whole, I conclude that the

---

[5] Plaintiff's briefing frequently debates her capacity to perform postural changes, such as stooping, kneeling, or crouching. Pl.'s Mem. (ECF No. 19, at 16). At step three of the sequential evaluation, the ALJ assigned Plaintiff an RFC that permitted these movements occasionally. (R. 30). The ALJ discounted Dr. Harris's opinion as "inconsistent" with the record because "physical therapy notes showed that the claimant could bend or stoop." (R. 34) (citing R. 769). But see (R. 769, 771) (showing only predictions of postural improvement).

However, at step four of the sequential analysis, the ALJ found that Plaintiff could perform her specific past relevant work as a call center representative. (R. 34). The call center representative does not require these postural activities. See DOT 249.362-026, 1991 WL 672320 (Jan. 1, 2016). Therefore, even if Plaintiff could not perform any challenged postural activities, it would be harmless error because she could still perform her past relevant work and would not be disabled. See Ross v. Berryhill, No. 3:18-CV-42, 2019 WL 289101, at *12 (E.D. Va. Jan. 3, 2019) (discussing harmless error doctrine), adopted by 2019 WL 281191 (Jan. 22, 2019). Arguments related to postural movements are thus not separately addressed.

ALJ's consideration of all opinion evidence conformed with the regulations.[6] The ALJ's finding is thus supported by substantial evidence.

In determining whether the claimant has a medically determinable severe impairment, or combination of impairments, that would significantly limit the claimant's ability to work, the ALJ must analyze the claimant's medical records and any medical evidence resulting from consultative examinations or medical expert evaluations. 20 C.F.R. §§ 404.1527, 416.927. When the record contains consistent medical opinions from different sources, the ALJ uses that evidence to determine disability. See §§ 404.1527(c), 416.927(c). If, however, the medical opinions are inconsistent with each other or with other evidence, the ALJ must evaluate the opinions and assign them persuasive weight. See §§ 404.1527(c), 416.927(c). Medical opinions are evaluated according to whether the source examined or treated the plaintiff, consistency and supportability, any specialization, and other relevant factors. See §§ 404.1527(c), 416.927(c); see also SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

The ALJ appropriately evaluated Dr. Harris's opinion in conformity with these regulations. She noted that Dr. Harris examined Plaintiff in 2015 and 2017. (R. 33); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) (giving "more weight" to examining sources). However, she assigned Dr. Harris's opinion "little weight" based on factors such as supportability and consistency, which is discussed in greater detail below. (R. 34). Further, there is no inconsistency

---

[6] Effective March 27, 2017, the SSA rescinded 20 C.F.R. §§ 404.1527 and 416.927 and implemented a new rule governing the consideration of medical opinions. See § 404.1520(c) (2017). Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them based upon the two most important factors of supportability and consistency. §§ 404.1520c(a), (c)(1)-(2). Because the regulation does not have retroactive effect, the Court will review the ALJ's decision under the old rule codified by 20 C.F.R. §§ 404.1527 and 416.927, in effect when Plaintiff filed her claim in December 2016. Parsons v. Berryhill, No. 3:18cv1107, 2019 WL 2252023, at *10 n.3 (S.D. W. Va. May 2, 2019).

in how the ALJ assessed Plaintiff's use of a walker, or incorporated it in questioning the VE. As such, Plaintiff's arguments about Dr. Harris's consultative opinion do not require remand.

### 1.   There Is No Internal Inconsistency in how the ALJ's Assessed Plaintiff's Use of a Walker.

Plaintiff first characterizes the ALJ's treatment of Dr. Harris's opinion as internally inconsistent, specifically critiquing the portion dealing with Plaintiff's use of a walker. Pl.'s Mem. (ECF No. 19, at 15). The ALJ discounted Dr. Harris's opinion that a walker was medically necessary because other findings "showed normal strength, normal gait, and ambulation without a walker." (R. 34) (citing R. 1231, 1344-79, 1471-72). However, the ALJ also specified that Plaintiff "should be allowed to use a walker." (R. 30). Plaintiff characterizes these two findings as an inconsistency requiring remand. Pl.'s Mem. (ECF No. 19, at 16). But the ALJ was not required to give Dr. Harris's opinion greater weight simply because she permitted Plaintiff to use a walker. Further, Plaintiff's additional arguments are without merit. The ALJ was not required to find that a walker precluded all carrying, and any perceived inconsistency is harmless as Plaintiff's past relevant work is available even with constant walker use.

### a.   The ALJ's decision to discount Dr. Harris's opinion that a walker was medically necessary is supported by substantial evidence.

The ALJ's treatment of Plaintiff's walker use is supported by substantial evidence. First, the records show that when Dr. Harris rendered her last opinion in August 2017, approximately two years before Plaintiff's application for benefits, the medical necessity for a walker was inconsistent with the record. (R. 998). As the ALJ observed, Plaintiff's medical records do not reflect consistent usage during that timeframe, but instead show "ambulation without a walker." (R. 34) (citing R. 1231) (failing to observe walker in May 2018). Other records before the ALJ show that, although Plaintiff received a prescription for a cane in August 2016, (R. 1159), it was not until September 2017 that providers noted that "she need[ed] a walker," (R. 1010), not until

16

April 2018 that she was using a three-wheeled rolling walker, (R. 1484), and not until April 2019 that she requested a prescription for a walker, (R. 1290). Also, even in March 2019—only a month before requesting a walker prescription—Dr. Kerner recorded that Plaintiff was ambulating "without assistive device" and full weight bearing.  (R. 1616). Plaintiff's own recitation of the relevant evidence also does not mention a walker until after Dr. Harris's evaluation.  See Pl.'s Mem. (ECF No. 19, at 19-20).  Thus, although the record may reflect some progression in her symptoms, Pl.'s Mem. (ECF No. 19, at 19), it does not show that the ALJ's assessment of Dr. Harris's opinion was unsupported by the evidence.

Plaintiff criticizes the ALJ for focusing only on findings of normal gait and ambulation before Dr. Harris's August 2017 examination and failing to discuss how "examinations conducted after that date showed a steady decline in Plaintiff's ability to ambulate." Id. at 20.  Plaintiff argues that discussion of later examinations was necessary to build an "accurate and logical bridge" between the evidence and the ALJ's conclusion.  Id. at 20-21 (citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016); Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015)).  However, the requirement is that an ALJ must "provide a coherent basis" for a determination.  Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018). Because the ALJ was evaluating the consistency of Dr. Harris's August 2017 opinion, it was logical for the ALJ to focus on evidence that was near in time to the challenged opinion, and sufficient evidence is cited throughout the opinion that the court can meaningfully review it.  See Ashcroft v. Colvin, No. 3:13-CV-00417, 2015 WL 9304561, at *6-7 (W.D.N.C. Dec. 21, 2015).

The ALJ also rooted her decision in Plaintiff's medical records showing normal gait and strength. (R. 34) (citing R. 1231, 1344-79, 1471-72).  Additional records before the ALJ confirm that, subsequent to Dr. Harris's opinion—and throughout the timeframe when she used a walker—

Plaintiff had a normal gait. See, e.g., (R. 1241, 1477, 1594). In January 2018, Dr. Hutcheson, the state medical examiner, noted that Plaintiff was "healing" from her 2017 MVA and "doing well but uses a walker on occasion." (R. 117). Dr. Alcantara found in June and July 2018 that, even though Plaintiff used a walker, she had full strength throughout all her leg muscles. (R. 1539, 1573) (assigning 5/5 in her hip flexors, quadriceps, hamstrings, and ankle and toe flexion). In January 2019, Plaintiff had a normal ROM and 5/5 muscle strength, (R. 1319), and the following month, she had "[n]o difficulty with tandem gait" but used a rolling walker, (R. 1594). A March 2019 exam found "normal strength and sensation and reflexes." (R. 1612-16). Plaintiff continued to display normal gait through August 2019. (R. 1477). These strength and gait findings substantially support the ALJ's decision to find Dr. Harris's opinion inconsistent with the record.

However, the ALJ made allowances for Plaintiff's actual use of a walker, stating that Plaintiff "should be allowed to use a walker." (R. 34). The RFC is not a reflection that a walker was medically necessary when Dr. Harris rendered her opinion.[7] Instead, it reflects how other evidence shows that—at the time of the ALJ's decision—Plaintiff was using a walker to ambulate. (R. 33) (noting that Plaintiff's "functional capacity decreased, as she now ambulates with a walker"). There was a plethora of more recent evidence before the ALJ showing Plaintiff's use of a walker—evidence she could rely upon which did not implicate Dr. Harris's 2017 opinion. See, e.g., (R. 76, 1009, 1162, 1290, 1484, 1594). The ALJ's allowance for the walker in the RFC was thus not inconsistent with her evaluation of Dr. Harris's opinion.

---

[7] The Social Security Administration clarifies that "the circumstances for which [the assistive device] is needed" must be considered when determining medical necessity. SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996), rescinded and replaced by SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). The circumstances in which Plaintiff required a walker are unclear from the evidence. Although Dr. Harris opined that Plaintiff "was unable to walk without it," (R. 998), Plaintiff's April 2019 prescription was specifically "help her get in and out of her car due to her chronic back pain," (R. 1290). However, because the ALJ permitted Plaintiff to use a walker, addressing these inconsistencies is not required.

**b.     The ALJ was not required to find that a walker precluded all carrying.**

Plaintiff contends that a walker precludes "carry[ing] any weight" at all. Pl.'s Mem. (ECF No. 19, 16-17); Pl.'s Reply (ECF No. 22, at 2). She relies on <u>Love v. Commissioner of Social Security Administration</u>, in which the Western District of Michigan observed a "fundamental illogic" in the ALJ's finding that a plaintiff (with a light work RFC) could "carry 20 pounds if he require[d] a hand-held assistive device to ambulate." 605 F. Supp. 2d 893, 907 (W.D. Mich. 2009) (cleaned up). Defendant argues that "this case is different" because Plaintiff was assigned sedentary—not light—work. Def.'s Opp'n (ECF No. 21, at 25); <u>see also</u> (R. 30). Substantial evidence supports the ALJ's finding that Plaintiff could carry small items as required by the exertional level of her past relevant work despite her use of a walker.

First, <u>Love</u> is not persuasive here. Even courts within the Western District of Michigan have noted that "<u>Love</u> did not conclude that the performance of light work was categorically incompatible with the use of a hand-held assistive device." <u>Halliwill v. Comm'r of Soc. Sec.</u>, No. 1:19-CV-197, 2020 WL 2393758, at *1 (W.D. Mich. May 12, 2020) (quoting citation omitted).[8] Sedentary work requires even less carrying than light work; in fact, while sedentary work requires lifting up to 10 pounds, it only requires <u>carrying</u> smaller and lighter "articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a), 416.967(a). Although Plaintiff uses a walker, which typically requires both hands, when the work is sedentary, an occasional inability to carry small articles does not preclude all work. This is particularly true when, as here, the VE has

---

[8] A hand-held assistive device does not automatically preclude carrying as required by sedentary work because claimants may carry objects in the other hand. <u>See</u> SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (noting that "[b]ilateral manual dexterity" was not necessary for "the standing and walking requirements of sedentary work").

testified that the specific type of sedentary work would be available despite Plaintiff's walker use. (R. 89).

At the time that Dr. Harris rendered her opinion, evidence also supported that Plaintiff could carry small objects. In a May 2017 function report, Plaintiff reported that she washed dishes and did laundry. (R. 348). In August 2017, Plaintiff told Dr. Harris that she could perform "all household chores . . . except vacuuming," which implies that she could carry small hand-held objects such as household cleaning agents. (R. 995) (emphasis added). She also could dress and undress herself without assistance during Dr. Harris's 2017 exam. Id. Additional evidence before the ALJ, particularly Plaintiff's daily activities, also support a finding that she could carry small items despite her walking limitations. See (R. 33) (observing that Plaintiff's "daily activities of living [were] not significantly limited"). At the hearing in August 2019, Plaintiff testified that on good days, she could walk a block and a half without her walker. See (R. 84-85). Plaintiff also represented that she could shop—which conventionally requires placing items in a shopping cart or carrying items to a payment station—for 20 or 30 minutes at a time, and that she did not use a motorized shopping cart on these shopping trips. (R. 81-82). Thus, Plaintiff's daily activities support that she could carry the smaller objects required by a sedentary RFC as applied to her past relevant work.

> c.    **Plaintiff cannot show harm because she can perform her past relevant work as a call center representative despite using a walker.**

Lastly, the vocational expert has testified that Plaintiff's specific past relevant work as a call center representative would be available regardless of how frequently she used a walker. (R. 89). Even if the use was "constant," the walker would not impact the employment opportunity. Id. Further, the ALJ even adopted the opined limitation in her RFC finding. (R. 30). It is unclear what harm potentially resulted from this perceived inconsistency because the ALJ would have

arrived at the same conclusion—that Plaintiff was not disabled—even if she had accorded greater weight to Dr. Harris's opinion regarding the walker.  See Ross v. Berryhill, No. 3:18-CV-42, 2019 WL 289101, at *12 (E.D. Va. Jan. 3, 2019) (discussing harmless error doctrine), adopted by 2019 WL 281191 (Jan. 22, 2019).

Plaintiff argues that the harmless error "reasoning must fail" because if greater weight was granted to this portion of Dr. Harris's opinion, then "the overall weight given to the opinion" would have increased.  Pl.'s Mem. (ECF No. 19, at 16).  Plaintiff implies that if Dr. Harris's opinion about the medical necessity of the walker were found consistent with the record and entitled to weight, then the requirement for a walker would have compelled the ALJ to find that Plaintiff could not "carry[] articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a), 416.967(a).  However, as Defendant argues, "Dr. Harris did not link these two limitations"—that is, Dr. Harris did not find that Plaintiff could not carry "because she use[d] a walker."  Def.'s Opp'n (ECF No. 21, at 24).  Dr. Harris found that the walker supported Plaintiff's ambulation, and in a separate sentence, recommended against lifting or carrying weight.  (R. 998).  Therefore, granting weight to the walker opinion would not create the results Plaintiff intends.  Further, plaintiffs must do more than identify some isolated logical flaw or lack of clarity to win remand.  See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").  The harmless error doctrine thus supports upholding the ALJ's RFC finding.

## 2. The ALJ's Decision to Discount Dr. Harris's Opinion Regarding the Lifting Limitations Is Supported by Substantial Evidence.

Plaintiff advocates that the ALJ should have given greater weight to Dr. Harris's opinion that "[l]ifting or carrying weight would not be recommended." (R. 998); Pl.'s Mem. (ECF No. 19, at 15) (focusing on opinion that Plaintiff was "incapable of carrying any weight").  The ALJ

assigned "little weight" to this opinion. (R. 34). Plaintiff accuses the ALJ of cherry picking the record and failing to properly assess the consistency and supportability of Dr. Harris's opinion. Pl.'s Mem. (ECF No. 19, at 17-19). Defendant argues that the ALJ adhered to the regulations in assessing the challenged opinion. Def.'s Mem. (ECF No. 21, at 26). Because substantial evidence supports the ALJ's assessment of the opinion's consistency and supportability, this claim of error does not require remand.

Plaintiff argues that the ALJ did not properly evaluate the supportability of Dr. Harris's opinion. Pl.'s Mem. (ECF No. 19, at 17). The regulations provide that an opinion will receive more weight to the degree "a medical source presents relevant evidence to support" that opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). The ALJ found that Dr. Harris's opinion was unsupported because Dr. Harris recorded "5/5 muscle strength" (the "5/5 Finding") while conducting her own examination of Plaintiff. (R. 34) (citing R. 995); see also (R. 996). Plaintiff accuses the ALJ of "focus[ing] on [this] single examination finding" to undermine the overall impact of Dr. Harris's examination.[9] Pl.'s Mem. (ECF No. 19, at 18). However, the ALJ did not use this finding to improperly undermine Dr. Harris's "overall assessment" of Plaintiff's ability. Hudson v. Colvin, No. 7:12-CV-269, 2013 WL 6839672, at *8 (E.D.N.C. Dec. 23, 2013) (quoting Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011)); see also Arakas v. Comm'r, SSA, 983 F.3d 83, 99, 102 (4th Cir. 2020) (finding that the ALJ errs when misstating or mischaracterizing facts). The ALJ was required by the regulations to consider whether Dr. Harris adequately supported her opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Dr. Harris did not specifically articulate

---

[9] Plaintiff refers to the 5/5 Finding as a "single finding," Pl.'s Mem. (ECF No. 19, at 17), but Dr. Harris made this same finding in both 2015 and 2017. (R. 533, 995).

evidence in favor of her opinion.[10]  Compare (R. 997), with (R. 998) (indicating that opinion appears in a separate document from her medical findings). And the ALJ is not required to "specifically refer to every piece of evidence" in the decision. Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).  Where, as here, Dr. Harris's opinion itself contains additional evidence that undermines it, the failure to list all of the evidence is not improper.  For example, Dr. Harris also found that Plaintiff had a free ROM in both hands and in her upper body joints, had no difficulty dressing and undressing, could feed herself, and had 5/5 grip strength. (R. 995-96).  Although the ALJ did not cite each of these findings when assessing the opinion's persuasive force, she was nonetheless justified in finding discrepancies between Dr. Harris's opinion and her own medical findings.

Moreover, the ALJ did not cite just a single record to show that Plaintiff had normal muscle strength—the ALJ cited all of Exhibit 30F, (R. 1344-79), to this point. (R. 34). An opinion is entitled to "more weight" when it is "consistent" with the record.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  The records in Exhibit 30F indicate that in multiple appointments throughout the spring of 2019, Plaintiff had normal muscle strength, tone, reflexes, and sensation. See (R. 1347, 1349, 1353, 1374).  Each of these show that the ALJ did not cherry pick or use the 5/5 Finding to undermine the record as a whole.  Additional uncited records before the ALJ collaborate that Plaintiff had normal strength, most notably Dr. Alcantara's findings in June and July 2018 that Plaintiff had full strength throughout all her arm and leg muscles. (R. 1539, 1573).  Even in March 2019, Plaintiff had "normal strength and sensation and reflexes." (R. 1612).

[10] This is particularly problematic where sedentary work requires carrying only small articles, 20 C.F.R. § 404.1567(a), 416.967(a), and Dr. Harris referred broadly to "weight," (R. 998).

Plaintiff complains that the ALJ should have considered certain of Dr. Harris's medical findings—and that absent "any meaningful discussion of . . . this evidence, it is unclear if this evidence was properly considered in evaluating the opinion." Pl.'s Mem. (ECF No. 19, at 18) (citing R. 533-34, 995-96). Plaintiff also cites specific evidence elsewhere in the record that she argues the ALJ should have considered in tandem with Dr. Harris's opinion. Id. at 17-20; see also Def.'s Opp'n (ECF No. 21, at 26) (responding to Plaintiff's citation to "four instances of slightly diminished strength") (referencing R. 446, 534, 996, 1010-11). However, the standard of review is important. The court must defer to the ALJ's findings if those findings are supported by substantial evidence. Perales, 402 U.S. at 390; see also Lewis, 858 F.3d at 865. This appeal is not an opportunity to relitigate the case. If "conflicting evidence allows reasonable minds to differ as to whether [Plaintiff] is disabled," then the court defers to the ALJ. Craig, 76 F.3d at 589 (quoting Walker, 834 F.2d at 640). Because, as detailed above, the ALJ's opinion here is supported by substantial evidence, the court does not consider whether the evidence might also support an alternative finding.

Plaintiff's last argument is that if Dr. Harris's opinion been credited, Plaintiff would have been found disabled under the medical vocational grids ("Grid Rules") because, at the time of the ALJ's decision, she was 63 years old and qualified as a person closely approaching retirement age. See 20 C.F.R. §§ 404.1563(e), 416.963(e). The Grid Rules are tables that apply during Step Five of the sequential evaluation process, and they

> consider the individual's RFC, age, education, and work experience and direct findings of "disabled" or "not disabled." Each grid considers only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. The grid rules are only met where they are exactly met.

Cobbs v. Colvin, No. 1:15-1972, 2016 WL 3085906, at *11 (D.S.C. Apr. 1, 2016) (first citing 20 C.F.R. Pt. 404, Subpt. P, App. 2; then quoting Walker, 889 F.2d at 49; and then quoting SSR 83-

11, 1983 WL 31252, at *1 (Jan. 1, 1983)), R. & R. adopted by 2016 WL 3059854 (May 31, 2016) (cleaned up).  Plaintiff claims she would have been found disabled under § 201.10 of the Grid Rules, which concerns a sedentary maximum exertional capacity and compels a disability finding for an individual closely approaching advanced age with a limited education.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.10.  However, the Grid Rules only apply when an individual must adjust to other work.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00 (Grid Rule apply only when "individual's impairment(s) prevents the performance of his or her vocationally relevant past work").  Here, Plaintiff could perform past relevant work.  Thus the ALJ did not need to consider the burden of adjustment as her evaluation of Dr. Harris's opinion is supported by substantial evidence.  This last argument is without merit

## V.    **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 20), DENY Plaintiff's Motion for Summary Judgment (ECF No. 18), and AFFIRM the Commissioner's finding of no disability.

## VI.    **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with

a copy thereof.  See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 27, 2022